```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

George Wilson

    v.                                              Civil No. 13-cv-129-LM
                                                Opinion No. 2014 DNH 125
Port City Air, Inc.


**O R D E R**

George Wilson is African American. For approximately four years, until his discharge in 2012, he worked for Port City Air, Inc. ("Port City"). Wilson has sued Port City, asserting claims for: (1) racial discrimination and retaliation, under New Hampshire's Law Against Discrimination, N.H. Rev. Stat. Ann. ("RSA") ch. 354-A (Counts I-V); (2) wrongful discharge (Count VI); and (3) racial discrimination and retaliation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Counts VII-XI). Before the court are: (1) Port City's motion to strike certain evidence in the summary-judgment record; and (2) Port City's motion for summary judgment. Wilson objects to both motions. The court heard oral argument on May 9, 2014. For the following reasons, defendant's motions are both denied.

**Motion to Strike**

In the context of summary judgment, motions to strike typically involve both an unnecessary litigation expense and a

waste of judicial resources.  Either a memorandum in support of an objection to summary judgment or a reply brief is an appropriate and effective vehicle for challenging the admissibility of evidence on which one side or the other relies at summary judgment.

Port City's motion to strike, which challenges only the admissibility of certain evidence, is denied for a variety of reasons: (1) some of its analysis is erroneous; (2) much of the evidence it challenges concerns facts that are not material, see [Daniels v. Agin](), 736 F.3d 70, 78 (1st Cir. 2013) (citing [SEC v. Ficken](), 546 F.3d 45, 51 (1st Cir. 2008)) ("A fact is material if it could affect the outcome of the suit under governing law."); and (3) little of the challenged evidence actually figures into the court's resolution of the pending summary-judgment motion.  To the extent that Port City raises any valid concerns regarding the admissibility of evidence, the court has taken those concerns into account in the balance of this order.  While the motion to strike is denied, it is denied without prejudice to challenging the admissibility of the evidence discussed therein at trial.

## Summary-Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law." Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (quoting Cortés-Rivera v. Dept. of Corr., 626 F.3d 21, 26 (1st Cir. 2010)); see also Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must "view[] the entire record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (quoting Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)). Thus, "the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim." Sánchez-Rodríguez, 673 F.3d at 9 (quoting Soto-Ocasio v. Fed. Ex. Corp., 150 F.3d 14, 18 (1st Cir. 1998)) (internal quotation marks omitted).

## Discussion

In the discussion that follows, the court takes Wilson's claims somewhat out of order and considers together the pairs of federal and state claims that are based upon the same conduct

and rely upon the same legal theory, "[b]ecause the New Hampshire Supreme Court relies on Title VII cases to analyze claims under RSA 354-A," Hubbard v. Tyco Integ. Cable Sys., Inc., ___ F. Supp. 2d ___, ___, 2013 WL 6234623, at *8 (D.N.H. 2013) (quoting Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc., 822 F. Supp. 2d 84, 92 (D.N.H. 2011)) (other citations omitted).

### A. Counts I, II, VII & VIII: Hostile Work Environment

In Counts I and VII, Wilson claims that Port City is liable to him, under state and federal law, for failing to take prompt and appropriate action to remediate a racially hostile work environment created by his co-workers. In Counts II and VIII, Wilson claims that his supervisors also engaged in conduct that created a hostile work environment based upon his race. In this section, the court considers separately the claims based on the conduct of co-workers and the claims based on the conduct of superiors. But first, the court outlines the relevant law.

#### 1. Relevant Law

"Title VII prohibits employers from discriminating against individuals 'because of [their] race, color, religion, sex, or national origin . . . .'" Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 186 n.5 (1st Cir. 2011) (quoting 42 U.S.C. § 2000e-2(a)(1)). "Requiring a person 'to work in a discriminatorily

4

hostile or abusive environment' violates Title VII." Gerald v. Univ. of P.R., 707 F.3d 7, 17 (1st Cir. 2013) (quoting Valentín-Almeyda v. Mun'y of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006)); citing Harris v. Forklift Sys., 510 U.S. 17, 21 (1993)).  More specifically, Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Torres-Negrón v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (quoting Harris, 510 U.S. at 21).

Turning to the elements of his claim, for Wilson to prevail, he must show:

> (1) that [he] is a member of a protected class; (2) that [he] was subjected to unwelcome . . . harassment; (3) that the harassment was based upon [race]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [racially] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Ponte, 741 F.3d at 320 (quoting Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 228 (1st Cir. 2007); citing Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)).  Finally, "because the inquiry into the existence of a hostile work environment is fact specific, 'the determination is often

5

reserved for a fact finder.'" Vega-Colón v. Wyeth Pharms., 625 F.3d 22, 32 (1st Cir. 2010) (quoting Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006)).  This is most certainly a case in which the determination of whether Wilson was subjected to a hostile work environment belongs in the hands of a fact finder.

### 2. Conduct by Co-Workers

Port City does not dispute Wilson's ability to prove the first three elements of his claims, but argues that it is entitled to summary judgment on Counts I and VII because Wilson cannot prove the fourth, fifth, or sixth elements.  That is, Port City argues that Wilson cannot show that: (1) the harassment he suffered was severe or pervasive; (2) the harassment was objectively and subjectively offensive; or (3) there is any basis for holding it liable for the conduct of Wilson's co-workers.  The court does not agree.

With regard to the fourth and fifth elements of his claim, Wilson has produced evidence that two nooses were placed in his workspace by co-workers; that the perpetrators of the noose incident were heard laughing about it; that one of the perpetrators of the noose incident, Adam Clark, subsequently told Wilson that if he continued talking to him in a particular way, he i.e., Clark, would get a noose; and that Clark told him

the "every nigger deserves a noose."  Wilson has also produced evidence that for a period of more than four months, on a daily basis, and all throughout the Port City facility, Clark used the terms "son," "boy," "coon," and "nigger," to describe him, either to his face or behind his back.  And, there is evidence that Clark did not desist even after Wilson asked him to stop using racially offensive language.  Finally, there is evidence that Wilson had been told about a conversation in which four co-workers, including the two perpetrators of the noose incident, said they wished Wilson were dead and that they wanted to "kill a black bastard," meaning Wilson.  That is more than enough to create a jury question on the fourth and fifth elements of a hostile-work-environment claim.

   As to the sixth element, employer liability for the conduct of a plaintiff's co-workers, a reasonable jury could find that due to the amount racial harassment in Wilson's workplace, and its openness, Port City should have known about it.  See Debord v. Mercy Health Sys. of Kan., Inc., 737 F.3d 642, 652 (10th Cir. 2013) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 675) (10th Cir. 1998)).  That is enough to create a triable issue of fact on the sixth element of Wilson's claim.

### 3. Conduct by Supervisors

With regard to Counts II and VIII, which are based upon conduct by Wilson's supervisors, Port City's memorandum of law does not even address the elements of the claim. Rather, Port City argues that Wilson's complaint identified no acts of harassment by supervisors. That, of course, is flatly incorrect; paragraphs 65 and 64 specifically allege racially charged conduct by Wilson's direct supervisor, John Andrews. Moreover, Wilson has produced evidence of daily use of racially offensive language directed toward him by both Andrews and by Wilson's previous supervisor, Robert Dunnell. That language included the terms "boy," "son," "cotton picker," and "nigger." As with Clark, Wilson has produced evidence that Dunnell and Andrews both continued to direct racially offensive language toward him even after he asked them to stop. Accordingly, Wilson has created triable issues as to Counts II and VIII.

### B. Counts III, IV, IX & X: Retaliation

In Counts III and IX, Wilson claims that Port City demoted him to the position of Lineman, in March of 2012, in retaliation for coming forward with an internal complaint about racial discrimination in early January of 2012. In Counts IV and X, he claims that Port City suspended, and ultimately discharged him, in retaliation for his filing charges with the New Hampshire

Commission for Human Rights ("HRC") and the federal Equal Employment Opportunity Commission ("EEOC"). Port City argues that it is entitled to summary judgment because Wilson cannot establish a prima facie case of retaliation for either of his two pairs of claims and because he cannot establish that the reasons Port City gave for demoting, suspending, and discharging him were pretexts for retaliation. Again, the court does not agree. In this section, the court begins with the relevant law and then turns to the specific acts of retaliation that underlie Wilson's claims.

### 1. Relevant Law

Under Title VII, it is unlawful for an employer to "retaliat[e] against an . . . employee because [he] has opposed any practice made an unlawful employment practice by this subchapter, or because [he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Garayalde-Rijos v. Mun'y of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) (quoting 42 U.S.C. § 2000e-3(a)).

Where, as here, a retaliation claim is based upon circumstantial evidence, courts employ "the McDonnell Douglas burden-shifting framework." Ponte, 741 F.3d at 321 (citing

Gerald, 707 F.3d at 21; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)). Under that framework,

> a plaintiff must first establish a prima facie case of retaliation by showing that (1) [he] engaged in protected conduct, (2) [he] was subject to an adverse employment action, and (3) a causal connection existed between the first and second elements. Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005). The burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its challenged actions." Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 10 (1st Cir. 1998) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981)). Finally, "[i]f the defendant does so, the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996).

Colón v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013) (parallel citations omitted).

With regard to the third stage of the McDonnell Douglas framework, i.e., pretext, the court of appeals for this circuit has explained:

> "[T]here is no mechanical formula for finding pretext." Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003) (internal quotation marks omitted). Instead, "[i]t is the type of inquiry where 'everything depends on the individual facts.'" Id. at 40 (quoting Thomas v. Eastman Kodak Co., 183 F.3d 38, 57 (1st Cir. 1999)). The inquiry focuses on whether the employer truly believed its stated reason for taking action adverse to the employee. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000). The plaintiff bears "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against

10

the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (alteration in original) (internal quotation mark omitted). Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 116 (1st Cir. 2013) (parallel citations omitted). "[W]here a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." Billings v. Town of Grafton, 515 F.3d 39, 56 (1st Cir. 2008) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998); citing Stepanischen v. Merch. Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983)).

### 2. Demotion (Counts III & IX)

Wilson has carried his burden of establishing a prima facie case. Port City has articulated a legitimate non-discriminatory reason for demoting him, i.e., absence from work without giving proper notification or clocking out. Wilson, however, has produced sufficient evidence on pretext to go to a jury. Specifically, he has produced evidence that his demotion closely followed his reporting of the noose incident to Port City management; that he had made, and been allowed to correct, nearly 20 previous time-clock errors without discipline; that no other Port City employee had ever been demoted for infractions

11

similar to the one for which he was demoted; and that Port City management deeply regretted, and tried to resist, discharging Adam Clark after Wilson reported the noose incident to management. From that evidence, a reasonable jury could conclude that the reason Port City gave Wilson for demoting him was a sham, intended to hide its desire to retaliate against him for reporting the noose incident and forcing it to take action against Clark that it did not want to take.

### 3. Suspension and Discharge (Counts IV & X)

Wilson has established his prima facie case, and Port City has articulated legitimate non-discriminatory reasons for suspending and discharging him, including his absence from Port City during work hours and his inaccurate recording of work time, problems with anger and bullying, and his lack of a security clearance necessary to service some international flights. But, again, Wilson has created a jury question regarding whether those reasons were pretextual. Among other things, he has produced evidence that most of the reasons Port City gave concerned issues it had known about, and tolerated, for years before it decided to impose discipline for them. And, it is undisputed that those long-tolerated issues became grounds for discipline mere days after Wilson filed complaints with HRC and the EEOC. In addition, the Port City directive making the

12

security clearance Wilson lacked a condition of employment was issued while he was under suspension and, consequently, unable to obtain his clearance.  There is also evidence that Wilson had spoken openly of the possibility that he might sue Port City and that Port City's President, Robert Jesurum, was displeased with Wilson for suggesting that he might do so.  Because a reasonable jury could find that the reasons Port City gave Wilson for suspending and discharging him were pretexts for retaliating against him for bringing formal charges of discrimination, Port City is not entitled to judgment as a matter of law on Counts IV and X.

### C. Count VI: Wrongful Discharge

In Count VI, Wilson claims that Port City is liable to him for wrongful discharge because it terminated his employment in retaliation for his: (1) reporting racial discrimination in his workplace; and/or (2) filing charges of discrimination with the HRC and the EEOC.  Because Wilson's two claims that he was discharged in retaliation for making formal charges of discrimination survive summary judgment, so too does his wrongful discharge claim.  Whether or not all three claims are ultimately submitted to the jury is a matter to be resolved at trial.  What matters for the moment is that as to Count VI, Port City is not entitled to judgment as a matter of law.

D. Counts V & XI: Discrimination

At oral argument, Port City agreed to give up Counts V and XI in the event that his discrimination and retaliation claims go to trial. Those claims have survived summary judgment. Accordingly, the claims stated in Counts V and XI are dismissed.

## Conclusion

For the reasons detailed above: (1) Port City's motion to strike, document no. 40, is denied, without prejudice to challenging the admissibility of evidence at trial; and (2) Port City's motion for summary judgment, document no. 34, is denied. This case now consists of the hostile-work-environment claims stated in Counts I, II, VII, and VIII, the retaliation claims stated in Counts III, IV, IX, and X, and the wrongful-discharge claim stated in Count VI.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 3, 2014

cc:  Matthew T. Broadhead, Esq.
     Jacob John Brian Marvelley, Esq.
     Paul McEachern, Esq.